Maurice SMITH et al *v.* Thomas Nelson
SCOTT and Mary T. SCOTT

75-40                               525 S.W. 2d 667

Opinion delivered June 16, 1975
[Rehearing denied September 2, 1975.]

*Thomas B. Keys* and *Kenneth Brock,* for appellants.

*Hardin, Jesson & Dawson,* for appellees.

CONLEY BYRD, Justice. The issues in this case were before us in *Ark. State Highway Comm. v. Scott,* 238 Ark. 883, 385 S.W. 2d 636 (1965), wherein we held that the chancellor erred in sustaining a demurrer to the Commission's evidence. Thereafter, that case became dormant without any further

proceedings, order or judgment and the papers have been lost. When the Commission subsequently proposed to reconstruct Highway 71, adjacent to the Scotts' lands, the latter brought this action to enjoin the Commission from entering upon the 23 foot strip in dispute until compensation was paid or secured. In defense to the Scotts' petition for an injunction, the Commission set up its rights under a 1927 County Court Condemnation Order and a 1952 County Court Condemnation Order. No service of process was issued upon either order. The trial court after a hearing found the issues in favor of the Scotts and for reversal the Commission contends:

> "POINT I. The trial court erred in finding that the 1927 County Court Order was ambiguous, inaccurate and incomplete and therefore was inadequate to condemn the land in controversy.

> POINT II. The trial court erred in finding that the 1927 County Court Order nor any actions taken pursuant thereto were sufficient to give notice to the appellees or their predecessor in title.

> POINT III. The trial court erred in finding that the Appellees had no notice of the 1952 County Court Order."

The record shows that in 1927, Highway 71, as it goes by Scotts' property, was put on a new location. In answer to interrogatories the Commission states that the centerline of the paved slab does not denote the centerline of the right-of-way claimed. The 1927 County Court Order described the new location of Highway 71 as follows:

> "Beginning at station 55 plus 10 which point is the corner for Sections 20, 21, 29 and 28, Township 8 North, Range 32 West, being on the South corporation line of the City of Fort Smith, thence South 0 degrees — 10 minutes East 990 — 0' to station 65 plus 00; thence South 0 degrees — 8 minutes East 800.0' to Sta. 73 plus 00; thence South 0 degrees — 47 minutes West 925.1' to Sta. 81 plus 25.1; thence South 0 degrees — 07 minutes

West for a distance of 1398.34' to Sta. 95 plus 23.44; thence around 10 degree curve to the left for a distance of 593.0' to Sta. 101 plus 16.44; thence South 59 degrees — 11 minutes East for 1029.18; thence around a 10 degree curve to the left for a distance of 305.33' to Sta. 115 plus 13.95, which point is on the Township line between Township 7 North and Township 8 North; thence South 89 degrees — 58 minutes East for a distance of 500.35' to Sta. 120 plus 14.3 back, 114 plus 06.9 ahead; thence North 89 degrees — 58 minutes East for 1562.6'; thence to the right along a 6 degree curve for 245' to a point 35' from said Township line to the center line of State Highway No. 71.

The right-of-way widths required for the alignment as hereinabove described being as follows:

| Station to Station | Lineal feet | Width to left of Center Line | Width to right of Center Line | Total width feet |
|---|---|---|---|---|
| 55 plus 10-121 plus 79 | | | | |
| 121 plus 79 equals | 6669 | 35 | 35 | 70 |
| 66 plus 69-112 plus 09 | 4540 | 35 | 35 | 70 |
| 112 plus 09-115 plus 14 | 305 | 35 | All that part lying 35' to right of center line and in Twp. 8 North Range 32 West | |
| 115 plus 14 equals 109 plus-125 plus 00 | 1593 | 45 | | 45 |
| 125 plus 00-129 plus 69.5 | 469.5 | 35 | | 35 |
| 129 plus 69.5-132 plus 15 | | All that part lying to the left and 35' from center line in Twp. 8 North Range 32 West." | | |

The record shows that the 1927 County Court Order was based upon Job No. 404. Thereafter, Federal Aid was obtained and the construction was done under Job No. 468.

James Mickle, a consulting Civil Engineer, testified for the Scotts that in attempting to plat the 1927 County Court

Order from the point of beginning, he found a 5000 foot error. When he attempted to plat the description in reverse order he found a 31.4 foot error. There was also a 31.4 foot error between the 1927 County Court Order and the construction plans for Job No. 468. Upon platting both the 1927 County Court Order and the 1952 County Court Order, Mickle found that the centerline for the 1927 County Court Order was 29.43 feet North and East of the Centerline of the 1952 County Court Order at the point closest to Scott's property. On cross-examination Mickle, as abstracted by the Commission testified as follows:

"The first column in this Court Order is 55 plus 10 which also appears on the first page and it says 55 plus 10-121 plus 79. The second line 121 plus 79 equals 6669 feet which is obviously the distance from 55 plus 10 to 121 plus 79. Okay, the next column then says without any equation 66 plus 69 to 112 plus 09 is 4540 feet. It never does say that station 121 plus 79 equals 66 plus 69, although perhaps this is what they intended it to be. The point of curvature as listed on page one is 95 plus 23.44 and the point of curvature on page two is not listed. It just tells you the width of the right of way between different stations, but it never does tell you where the point of curvature is. I think that we totaled the distances between the total length as listed on page one of the County Court Order and the total length as listed on page two. We probably found out that there was an apparent discrepancy which may have been able to have been explained by the stationing. But it does not give the point of curvature of the curve in question so there is no way that you could determine coming from the north and running south where that point of curvature was from this Court Order. The point of curvature that I think you have been referring to is at station 95 plus 23.44. The 10 degree curve referred to in the County Court Order is at station 95 plus 23.44."

Appellee, Thomas Nelson Scott, testified that he knew nothing about the 1952 condemnation order. He readily admitted that the highway was widened three feet next to his property but testified that he agreed with a representative of

the Highway Department that the Commission could enter and extend the highway 36 inches on his side and the Highway representative in consideration thereof agreed to shoot and seal the space between his concrete and the pavement with surface material to keep down dirt and chug holes.

Scott's testimony was corroborated by Cecil Dunn, the Skelly Oil Company Distributor at the time. Mr. Dunn had some contact with representatives at the same time relative to the location of some signs. The replacement of the signs at that time corresponds with the Scotts' present contention with reference to the location of the Highway 71 right-of-way.

Billy F. Prince, a surveyor for the Commission for 23 years, testified that he had no trouble locating the centerline of the 1927 County Court Order. He admitted that the description contained a 5000 foot error if you started at the beginning and that there was a 30 foot error if you surveyed the description backward. However, it developed on cross-examination that in doing his surveying he had a copy of the 1952 construction plans, Job No. 4371, a copy of the plans for Job No. 468 and a copy of the 1927 order but in making his survey he started from and stopped at two reference points on the Job No. 468 plans where bridges had been installed.

David Kit Carson, an engineer for the Highway Commission, testified that he was able to plot the 1927 County Court Order description. In comparing the centerline of the roadway as called for in the 1927 order with the 1952 order, there was a 31 foot error on the south end and a 5200 foot error on the North end. However, he found that the errors were corrected when reference was made to the construction plans.

POINT I. Ordinarily a property owner has no trouble in determining the actual location of a right-of-way when it is placed upon a new location. See *Arkansas State Highway Commission v. Staples*, 239 Ark. 290, 389 S.W. 2d 432 (1965), where the new location was cut through the woods. Here the taking was in an open field and the taking was under Job No. 404, whereas the actual construction was done sometime later under Job No. 468. Even the plans for Job No. 468 were drawn

after the 1927 condemnation order. Two respectable engineers testified — one testifying that the 1927 order could be accurately plotted even though it contained two obvious errors and the other testifying that you could not plot the description from the starting point because of the 5000 feet error and that there was a 31.4 feet error when plotting the description backwards. We have searched the record to ascertain why one of the engineers should be believed over the other engineer and we have found nothing in the record or the briefs that would be convincing as to the accuracy of the testimony of either engineer. Under such circumstances we ordinarily defer to the judgment of the trial judge who had the advantage of seeing and hearing the witnesses. Consequently, we cannot say that the trial court erred when it found "that the 1927 County Court Order is ambiguous, inaccurate, and incomplete and therefore was inadequate to condemn any strip of land south and west of the slab as it now exists, and which is owned and claimed by [Scott]."

POINT II. Ordinarily an entry upon land is coterminous with one's title. Here however, the Commission's 1927 title is so defective that we cannot determine that it covers the area in dispute. There is nothing in the record to show an actual entry upon the disputed area — in fact the proof is rather clear that there was no entry upon the disputed area under the 1927 order. Consequently, we cannot say that the trial court was in error in finding that "the said 1927 County Court Order nor any actions pursuant thereto were sufficient to give notice to the plaintiffs or their predecessors in title or a reasonable opportunity to seek compensation for the taking contemplated by the [Commission] herein."

POINT III. So far as this record shows the 1952 construction, was done within the 70 feet right-of-way obtained by the 1927 order. The Commission does not contend that the 70 feet taking in the 1952 County Court Order covers any area not covered in the 1927 order. While this circumstances leaves one to wonder why the 1952 order was entered without service of process, we can certainly understand why a property owner such as the Scotts would not know of its existence. Thus the question of whether the Commission entered under

the 1952 County Court Order in making the three feet extension in 1952 or as Scott claimed by permission for their mutual benefit would turn upon an issue of credibility. We cannot say under this record that the Chancellor's findings are contrary to a preponderance of the evidence.

Affirmed.

HARRIS, C.J., dissents.